# DECISIONS

## OF THE

# SUPREME COURT OF FLORIDA.

| 23 | 13 |
|----|-----|
| 47 | 188 |

## JANUARY TERM, A. D. 1887.

CHAS. S. ADAMS, ADM'R., APPELLANT, VS. EDWIN HIGGINS ET AL., APPELLEES.

1. The effect of an amendment *nunc pro tunc* of the entry or record of a judgment is, as between the parties thereto and except as to certain third parties, to make the judgment of the same effect as if the defects, on account of which it was amended, had never existed.

2. The object and effect of an amendment *nunc pro tunc* of a judgment is to furnish proper evidence of facts properly done by the court, but not properly exhibited by its record, and such evidence is furnished *nunc pro tunc* for the purpose of supporting those acts which, though the proper consequence of a judgment, would seem to be irregular and void, because there was no proper evidence of a judgment.

3. A sale of lands of a deceased person under an execution to be levied "of the goods and chattels, lands and tenements, of J. S. D., as administrator of the estate" of such deceased person, is valid, such execution having been issued upon a judgment, the entry of which, though originally defective as a judgment to be satisfied out of the estate of the deceased, was subsequent to such sale amended *nunc pro tunc*, on regular proceedings, so as to evi-

dence a formal judgment of the character indicated. Such execution, though not in proper form, was sufficiently so to show upon its face that its purpose was to be satisfied out of the deceased's property, and not the individual estate of the administrator. The effect in law as to the amendment was to render the judgment as existing from the time of its original or imperfect entry, in its perfect or amended form, and as such in law, the basis of the execution upon which the sale was made.

4. Defects in writs of execution do not vitiate sales unless they are such as render the writs void and are not amendable.

5. Amendments of judgments and executions may be made after sales of property under them.

6. The amendment *nunc pro tunc* of a writ of execution makes it, as between the parties, as if the defect had never existed.

7. No defect in a writ of execution will have the effect to preclude a plaintiff therein from acquiring title at a sale of property thereunder, unless it be such a defect as renders the writ void, and consequently such an one sa is not amendable.

8. The amendment *nunc pro tunc* of the writ of execution held to have adjudicated in favor of appellee that the defects were not such as prevented his acquiring title at the execution sale.

9. A deed should be construed according to the meaning of the same, looking at all of its parts.

10. The sheriff's deed described executions as issued upon two judgments, wherein named persons were plaintiffs, and "John S. Driggs, administrator of the estate of John S. Adams, is defendant," and recited that the sheriff did "levy on and seize all the estate * * * which the said defendant had in or to the property hereinafter described," and that "the said property was struck off" to the grantee ; and it conveys to him "all the estate, right and title and interest which the said defendant, *the said estate of J. S. Adams, deceased,* had at the date of the respective judgments aforesaid, or at any time afterwards " in the land. *Held :* That the deed conveyed whatever title or interest in the land was a part of the estate of Adams.

Appeal from the Circuit Court for Sumter county.

*A. W. Cockrell & Son* for Appellant.

We insist the judgment as originally rendered upon which the executions were based, did not authorize a sale of these lands by the sheriff or any interest therein, which belonged to John S. Adams, at the time of his death.

2d. The executions as they were when the lands were so sold did not authorize a levy upon, or a sale of said lands, or any interest therein, which belonged to John S. Adams, at the time of his death.

3d. The deed does not, *in point of fact*, convey any interest or estate in said lands, which belonged to John S. Adams, at the time of his death.

The first two propositions will hardly be denied : if denied, they find abundant support in the adjudications of this and other courts. The judgments as rendered were as follows, the one— "It is therefore ordered and adjudged that the plaintiff have and recover of and from the defendant the sum of four hundred and four dollars and eighty cents."

And the other in the same words, except as to the sum recovered, which was $1,133.56.

In Livingston vs. Cooper, Executor of John Roberts, 19 Fla., 694, this court uses this language: "The judgment in this case is entered against the defendant 'that the plaintiff have and recover of and from the defendant,' the damages and costs. This is not a proper judgment against the defendant Cooper as executor, nor is it to be satisfied of the goods, &c., of the decedent."

As the sole authority of the clerk, who exercises purely ministerial functions, is to issue an execution enforcing the judgment, it is difficult to conceive by what process of reasoning he is justified in issuing process requiring to be " *satisfied out of goods*, " &c., a judgment which is " NOT to be satisfied out of such goods," &c. This would be to place the ministerial above the judicial officer ; indeed, to

16 SUPREME COURT.

Chas. S. Adams v. Edwin Higgins et al.—Argument of Counsel.

substitute for the solemn judgments of a court the caprice of a clerk who executes, *not* the judgment of the court as rendered, but *his conception* of what that judgment should have been.

It is not every judgment rendered upon a suit against an administrator as such, that is leviable of the goods of the decedent. From whose property the debt, evidenced by the judgment, is to be made is a matter to be determined by *the court*, NOT by the clerk, and must be expressed in the judgment.

"We know," says the court, in Higgins vs. Driggs, 21 Fla., "that judgments are often rendered against defendants as administrators to be satisfied, sometimes *de bonis testatoris* and at other times *de bonis testatoris* as to the debt and *de bonis propriis* as to the costs, and sometimes *de bonis testatoris* when assets of the deceased shall come to the hands of the administrator," etc.

And so it is. The judgment must in and of itself show *whose* property is condemned to its satisfaction. And hence it has frequently been held, as in Hardy vs Cook, 16 Mass., 530, that a judgment rendered, *in terms*, against a defendant, in his capacity as administrator, is not a judgment against the goods, etc., of the intestate. "It is very clear," says the court, "no judgment has been rendered against the goods and chattels of Palmer, the intestate."

In the judgment, as rendered, under which Adams' lands were sold, at the time they were sold there was absolutely no judgment against Adams, the testate. These judgments did not, *in terms*, as did the Massachusetts' case hereinbefore quoted, purport to be a judgment against Driggs, " in his capacity as administrator." They were, at the time Adams' lands were sold, in fact, and in terms, nothing but

judgments against Driggs personally, *whatever they ought to have been.*

Having now clearly ascertained the nature and᠎ legal effect of the judgment, as rendered, let us consider:

1st. What kind of an execution the clerk *could* issue upon the judgment; and,

2d. What kind of an execution, its nature and legal effect, he *did in fact* issue upon it.

The executions issued upon the judgments commanded " that of the goods and chattels, lands and tenements of *John S. Driggs,* as administrator of the estate of John S. Adams, deceased, you cause to be made the sum of $1,134,-56, which lately *was recovered against him.* (The italics are ours.)

It was contended that the insertion of the words " *as administrator,*" &c., following the name of John S. Driggs, in this execution, indicated that the execution was to be satisfied out of " the goods, &c.," which were of John S. Adams, deceased.

It will be observed these words, thus inserted in the execution, *were not found* in the judgment that was rendered.

In Kneib vs. Graves, 72 Penn. St., 105, the court says: "Nothing can be plainer than that the execution must follow the judgment and be warranted by it." If then this execution departed from the judgment, in the use of the words quoted, in the sense imputed to them, the departure was wholly unwarranted; and the execution, thus construed, was palpably without a judgment supporting it. 34 N. J. Law, 305. But we submit, the words "*as administrator,*" &c., following the name of Driggs, in the execution, cannot have the meaning ascribed to them; indeed, this court has determined in Higgins vs. Driggs, 21 Florida, the legal

3

effect of such an execution to be an execution against the administrator individually; says this court: "We have found in the books several judgments rendered against G. D. as administrator of A. B., and then stopping without saying out of whose property they should be paid; but from these judgments, so far as we can learn, executions were issued in the usual form, to be levied of the property of the deceased. But the only execution that we have found that does not show out of whose property it is to be satisfied is to be found in 51 Ga., 483, Tinsley vs. Lee, that execution is substantially the same as the one under consideration"—which last was issued by the same clerk, and was in *totidem verbis* the execution now under consideration—" as appears from the following copy of it, to wit: We command you, of the goods and chattels, lands and tenements of Thomas W. Howell, executor of William Tinsley, deceased, that you cause to be made the sum of $238.85, principal, and the further sum of $48.24, interest and costs, which the plaintiff lately recovered against said Thomas Howell, executor of William Tinsley, deceased. The Supreme Court of Georgia decided this was an execution against the individual property of Thomas Howell, saying: 'the addition of executor to his name, without more, did not prevent the decree from binding his personal goods and chattels.' "

And so says the Alabama court: " When the mandate of an execution is that it be levied of the goods, chattels, lands and tenements of the defendant, as administrator, it is to be regarded as issuing against him, individually, subjecting his individual property; the words as administrator being treated as merely *descriptio personæ*." Averett vs. Thompson, 15 Ala., 678.

So, we say, if the decisions in Livingston vs. Cooper, executor of Roberts, cited with approval in Higgins vs.

Driggs, and the latter case, be regarded as law, the clerk was not authorized to issue, *nor did he in fact issue*, prior to the sale, on these judgments, any process by which the lands, which belonged to John S. Adams at the time of his death, *could be sold ;* nor was there any process, *at and before the sale,* in the hands of the Sheriff, by which *he could* sell them. In Higgins vs. Driggs, this court uses this significant and conservative language : "Every writ purporting to be an execution ought to be suspended on application to the court, unless it shows *clearly* on its face out of whose property it is to be satisfied, for it is not proper to leave the Sheriff in doubt on that subject, *as it is unlawful for him to levy upon the property of any one, except by the express command of the law.*" (The italics are ours.)

The conclusion, it seems to us, is irresistible, in the light of the adjudications, that the action of the Sheriff, in levying upon, and selling, and conveying, lands which belonged to Joha S. Adams, deceased, under these executions, if he did so levy, sell and convey, was an unlawful act; and no title was, or could be, vested in Higgins thereby.

In House, Administrator, vs. Spivey, 44 Geo., 616, the distinction between judgments rendered against defendants as individuals and judgments rendered against administrators in their representative capacity is so broadly drawn that it is declared " an execution against the individual property of an administrator, issued on a judgment against the administrator in his representative capacity, is a nullity." The converse of this proposition must also be true.

And in Palmer vs. Palmer, 2 Conn., 465, the court, speaking to the point under discussion, declares that the execution is based on the judgment and bears the same relation to it as the judgment bears to the declaration, and the latter supports the judgment, just as the judgment supports the execution. We beg to commend to the careful

attention of the court this well considered Connecticut decision.

But the referee, in determining that the title was vested, by the Sheriff's sale, in Higgins, regarded the question as concluded by the amendment of the judgment entry, and the execution made by the court below and affirmed by this court.

We do not deny the power of the court, in asserting a just control over its own records, to amend them, after the adjournment of the term, where the data for the amendment are furnished by the records or *quasi* records of the court.

But if it be true that the original judgment was a personal judgment against Driggs, and the execution thereon was an execution against him individually, subjecting Driggs' individual property; and the sale of the Sheriff thereunder was effectual to divest the title of Adams and vest it in Higgins, this divesture and investure of title did not take place until the amendment in this case had *supplied* a judgment, leviable of the goods, lands, &c., which were of John S. Driggs, deceased; and *had also supplied* an execution, commanding the Sheriff to seize this property, thus by amendment, made subject to this process.

In other words, Higgins has acquired title by virtue of an amended judgment, *which has never been executed;* through an amended execution issued thereon *which has never been levied.*

It is not claimed that the amended judgment, by which an individual judgment leviable of the property of Driggs is converted into a judgment leviable of the lands which were of the deceased Adams, *has been enforced;* nor that the execution issued, on the amended judgment, *has been levied.* The title asserted by Higgins is derived from a *personal* judgment against a defendant who had no propri-

etary interest in the lands, *enforced* by an *execution* which did not subject the lands that were sold to seizure or sale.

But the claim is set up that the original judgment ought to have been entered, not against Driggs, personally, as it was in fact entered, but so entered as to be leviable of the property which was of John S. Adams, in the hands of Driggs, as administrator, to be administered.

The conclusive reply to this claim is that a personal judgment against Driggs *was rendered*, and the *only* authority the Clerk had on that judgment was to enforce it, by an execution based upon the judgment, and following it as the only warranty of the execution, commanding the Sheriff to make the money out of the judgment debtor, Driggs, individually. Kneib vs. Graves, 72 Penn. St., 105. Concede, however, the judgment was amendable in conformity to the claim set up in the declaration, and that being so amended *nunc pro tunc*, it is become now, as it ought to have been, a judgment *not* against Driggs individually, but a judgment leviable of the property which was of John S. Adams, deceased. What is the effect of such an amendment? Section 67, Freeman on Judgments, thus lays down the rule: "With the exception pointed out in the above section, a judgment entered *nunc pro tunc* must be everywhere received and enforced in the same manner and to the same extent as though entered at the proper time."

The question then recurs, " *in what manner* " is an execution of a judgment leviable of the lands, tenements, goods and chattels, which were of John S. Adams, deceased, enforced? Can such a judgment be enforced by a sale of such "lands, tenements, goods and chattels," upon an execution directed against *Driggs individually*. Conceding the judgment properly entered, the execution which was issued under which the lands of John S. Adams were sold, *did*

*not justify* the sale of the *testator's* property.   Beasely vs. Dunn, 8 Richardson, 345.

"It is indispensable the execution should show upon whose property it is to be levied ; if it does not it is worthless, and cannot support a title derived through a sale thereunder."   Freeman on Executions, section 42 ; Douglas vs. Whitney, 28 Ill., 364.   Quoting the language of the court in this last case, we say : " Before *one's* property can be sold under a judgment against *him*, there should be an execution against the property of *the judgment debtor.*"   Certainly the execution under which the property bought by Higgins was sold was not such an execution.

This court in affirming the propriety of the amendment of this judgment did not intend to trench upon the salutary rule laid down in section 67 of Freeman on Judgments, that amended judgments were to be enforced in the same manner as though they had been properly entered.   Lest their action in amending the judgment, on the application of the owner of the judgment, Edwin Higgins, who was also the purchaser thereunder, as shown in his application, should be construed as approving an enforcement of a judgment *de bonis testatoris* by an individual execution directed against the property of the administrator, this court says : " As to any rights acquired or lost under this judgment prior to the amendment in the court below, we express no opinion."

It is claimed that this execution in the form in which it was issued was not absolutely void, as against the lands of the testator, but only voidable, or amendable ; and that having been amended, the amendment related back to the time it was issued, and confers authority on the Sheriff to sell the testator's property, though none existed before.

We admit that if the process was in this case merely irregular an innocent third party, purchasing at Sheriff's sale, would be protected.   But we insist even in such cases

*only* the innocent third person purchasing at Sheriff's sale would be protected. And *to secure* such protection the innocent third person purchaser must show a valid judgment, execution and Sheriff's deed ; other questions are between the parties to the judgment and the officer. Wheaton vs. Sixton, 4 Wheat., 503, and in Sullivan & Price vs. Henderson, 11 Geo., 294, the court declares, *if the Sheriff has authority to sell the property* a failure of performance of any part of his duty would not destroy the title of an innocent purchaser ; and that " it has been repeatedly held that a purchaser at Sheriff's sale, who is also the plaintiff in the execution to whom the money is payable, and who therefore parts with no money, is not entitled to the protection of a bona fide purchaser for a valuable consideration." Williams vs. Hollingsworth, 1 Strobher's Eq., S. C., p. 103.

Now in the case at bar the purchaser at the execution sale was the plaintiff in the execution, and the owner of the judgments, and also one of the attorneys who obtained the judgments. Speaking to the relation of such a party to irregular proceedings, the Supreme Court of Illinois, in Rybee vs. Ashby, 2 Gilman, 151, says " that although innocent purchasers will be protected, when the process is voidable only, the same reasons of policy do not exist where a judgment creditor becomes the purchaser ; it is *his* execution; it is to be executed for *his* benefit; and it would be the height of injustice to allow the party guilty of the irregularity to take advantage of it."

The question then recurs, can Higgins, upon a cause of action accruing against a testator, institute a personal suit and recover an individual judgment against the administrator ; have the personal judgment enforced by an execution against the administrator personally, and a sale of the

lands of the testator thereunder, and acquire title to said lands by a purchase at Sheriff's sale ?

Can any one say that such a sale, under such a judgment and such an execution, invited an investment of capital seeking a safe investment? And if not invited, was it driven away, and if driven away, who profited by having no one to enter the field of competition against him? Edwin Higgins is now before the court, insisting that he shall enjoy the profits of this sale, secured to him through his irregular judgment and his irregular execution.

We contend that the total want of authority to sell Adams' lands cannot be supplied to the Sheriff by an amendment under the operation of the doctrine of relation back.

If the judgment, as originally rendered, was the sole warrant to the Clerk for the execution issued to enforce the judgment, and the judgment as rendered was an individual judgment against the administrator, it follows the only execution the Clerk could have issued upon that judgment, as it stood, until it was amended in this case, was an execution directed against the individual property of Driggs. And as we have hereinbefore shown, the execution that was issued was precisely such an execution, the only execution that could have issued upon that judgment. Linn *et al.* vs. Hamilton, 34 N. J. L., 308.

If, as this court has argued in Adams, Administrator, &c., vs. ReQua, for the use of Higgins, in manuscript, the judgment was amendable, " it being apparent from the body of the declaration that such was plainly the intention," it seems to us it is equally apparent the execution bearing the same relation to the judgment that the judgment bears to the declaration, (Palmer vs. Palmer, 2 Conn.,) that the execution was *not amendable* until the judgment in fact was amended, it being apparent from the body of the judgment, before it was amended, that no other exe-

cution than an execution directed against the property of Driggs *could have issued* thereon; hence we insist that the amendment of the execution, *nunc pro tunc,* relates back to the time, and no further than the time, when the execution as amended *was properly issuable;* that is, the time when the judgment was made a judgment against the lands, &c., of John S. Adams, deceased. *Prior* to that time there was no clerical misprison in issuing the execution; *prior* to that time the execution that was issued was in precise conformity to the law and the judgment which warranted the execution.

We have made the forgoing argument upon the concession, not that an amendment merely, but, that an amendment *nunc pro tunc,* had been actually made.

Conceding the right of the court, and that it was properly exercised in this case, to amend its record, and that the entry of the judgment against Driggs individually was a misprison of the clerk, amendable at a subsequent term, so as to make it conform to the declaration; and that the indebtedness set up in the declaration was a cause of action against the testator, Adams, deceased; the court in this case, though importuned to make the amendment "*nunc pro tunc,*" simply amended the judgment as shown by the Record, but NOT "*nunc pro tunc.*" It is true the Supreme Court, in argument, asserts the power of the court below to amend "*nunc pro tunc;*" but *its* judgment was to *affirm,* not to *modify* the judgment of the Circuit Court. The power to amend and a simple amendment is one thing; the right and duty to amend "*nunc pro tunc,*" and an actual amendment "*nunc pro tunc,*" is another and different thing. Allen vs. Thrall, cited in 41 Vermont, 79; Williams vs. Sharpe, 70 N. C., 582.

Can there be any doubt that *prior* to the amendment of the judgment and execution in this case the title of these

lands was in the devisees of J. S. Adams; that the deed of the Sheriff was theretofore *wholly* inoperative to pass the title out of Adams' representatives; and is not the contention of Higgins now, when reduced to its last analysis, that he acquired title by operation of these amendments?

We submit, that if there was no authority in the Sheriff to convey these lands *when* the deed was executed, the deed is inoperative. In Bernal vs. Gleim, 33 Cal., 558; and in Gorham vs. Wing, 10 Mich., 486, the deed was held inoperative for the reason that *at the time* when the deed was executed the Sheriff had no authority to make it. The want of authority, rendering the deed inoperative in the California and Michigan cases, was referred to the fact that the necessary time had not *then* elapsed—that is the period of redemption had not expired. In the case at bar, the want of authority is referred to the fact that the authority to sell the lands of Adams had not then, by the corrective action of the court amending the judgment and execution, been supplied to the Sheriff. See Criswell vs. Ragsdale, 18 Tex., 443.

We submit, lastly, the Sheriff's deed did not convey to Higgins *any interest* whatsoever in the lands which belonged to John S. Adams at the time he died.

There are two Sheriff's deeds, but as one was the result of an execution, issued by the Clerk of the Circuit Court of Sumter county upon a judgment recovered in the Circuit Court of Duval county, there is no authority of the law for the execution, and the deed falls with it.

The Sheriff's deed relied on is found on page 67 of the Record.

It will be observed that no effort has been made to amend *this deed*, "*nunc pro tunc*," or otherwise. It stands as it originally did and refers to, and is based on the judgments and executions as originally rendered and

issued. It refers to both the judgments and identifies them as judgments in which John S. Driggs, administrator of the estate of John S. Adams, deceased, is defendant; and refers to the execution as commanding him, the Sheriff, of the goods, &c., *of said defendant* to cause to be made the amount of said execution; and recites that " said Sheriff did levy on and seize all the estate, right, title and interest which the *said defendant* had of, in and to the property hereinafter described; " that on the first Monday in September, 1880, he " sold the said property," which was struck off to Edwin Higgins; " how this indenture witnesseth that said Sheriff by virtue of said execution and in pursuance of the statute, &c., by these presents doth grant, bargain, sell and convey unto said Edwin Higgins and his heirs, all the right, title and interest which *the said defendant, the said estate of John S. Adams*, deceased, had at the date of the respective judgments aforesaid, or at any time thereafter of, in and to all that certain piece or parcel of land, etc."

We submit this deed, in its whereas clauses, proposed to convey only the lands of Driggs, the defendant, and in its operative clause professes to convey only the estate, right, title and interest of the defendant, *the said estate of J. S. Adams*, deceased, and only such as *the said estate had* at the date of and since said judgments.

Now if it be true that " an estate " cannot own any estate, right, title or interest in lands as the court decided in the case of Griffin vs. Wilson, it is clear this deed *cannot* and did *not* pass any estate, right, title or interest in and to the lands described in the deed. Nor, if it be otherwise, was *the estate of John S. Adams, deceased*, the defendant in any judgment; and inasmuch as it is clear it was only intended to convey the interest of such *judgment defendant*, that is, *the estate of J. S. Adams, deceased;* for that reason

the *dedi concessi* clause conveys nothing; unless the Sheriff by his deed can erect the Circuit Court of Duval county into an Admiralty Court and endow property with a status as defendant, no right, title or interest passed by this deed.

*H. Bisbee* for Appellees.

MR. JUSTICE RANEY delivered the opinion of the court.

I. This is an action of ejectment instituted July 20th, 1885, by the appellant as administrator *de bonis non cum testamento annexo* of John S. Adams, deceased, against Edwin Higgins and Charles P. Lovell, to recover an undivided half interest in a parcel of land in Sumter county. Higgins pleaded not guilty, and Lovell's plea denies any possession or control by himself or any one claiming under him at the time of the commencement of the action, and further disclaims any right, title, interest or possession in, to or of the land or any part thereof. By consent of parties the case was referred to Mr. Francis P. Fleming, an attorney at law, for trial. He gave judgment in favor of the defendants and overruled a motion of the plaintiff for a new trial, and the latter has appealed. The findings of the referee are set out in the statement. His conclusions of fact are fully supported by the testimony.

The controversy before us is between the appellant and Higgins, and the first question it involves is the effect of the amendment *nunc pro tunc* made by the Circuit Court of Duval county, November 28th, 1885, upon writs of *scire facias* issued July 23, 1885, of the judgments and writs of *fieri facias* mentioned in the findings of the referee, these judgments having been rendered, one November 3d and the other November 12th, 1879, and the executions having issued July 19th, 1880. These judgments and *fi. fa.'s* were obtained when Driggs was administrator of the estate of

John S. Adams, but when the *sci. fa.'s* issued and the amendments *nunc pro tunc* were made, the appellant was such administrator. The orders allowing the amendment *nunc pro tunc* were appealed from, but affirmed by this court. Chas. S. Adams, Administrator, vs. ReQua for the use of Edwin Higgins, 22 Fla., 250. The land was purchased by Higgins at public sale made by the Sheriff of Sumter county, under the *fi. fa.'s*, on the first Monday in September, 1880. Higgins was, at the time of the sale, the owner of both judgments. The deed from the Sheriff conveying the land to him bears date September 6th, 1880, and was recorded in the Sumter county records the next day.

The amendments are unquestionably amendments *nunc pro tunc*. No other construction can be given to the action of the Circuit Court considering the entire proceedings on the writs of *scire facias*.

Appellant insists that " the judgments as originally rendered, upon which the executions were based, did not authorize a sale of these lands by the Sheriff, or any interest therein which belonged to John S. Adams at the time of his death," and that " the executions as they were when the lands were so sold did not authorize a levy upon or a sale of said lands, or any interest therein which belonged to John S. Adams at the time of his death."

Mr. Freeman, in his work on Judgments, says that excepting the rights of third persons (none of which are involved in the case before us) a judgment entered *nunc pro tunc* must be everywhere received and enforced in the same manner and to the same extent as though entered at the proper time. Though, says he, an execution may have issued and proceedings under it culminated by the sale of property when there was nothing on the record to support it, yet the omission was one of evidence and not of fact, and the evidence being supplied in a proper manner, full

force and effect will be given to the fact as if the evidence had existed from the beginning. Ib., 67. The former of these two sentences from Mr. Freeman, so far as it speaks of the *enforcement* of a judgment entered *nunc pro tunc*, relates to one which had not been enforced, but the latter sentence relates to the effect of an entry *nunc pro tunc* of a judgment which had been previously enforced. As the judgment before us had been enforced previously to the amendment *nunc pro tunc*, it is apparent that what is said in the former sentence as to the enforcement has no application here. Of course, however, the enforcement made before the amendment must be in the same manner as if the amendment had been made. The same author, in his work on Executions, states that the time within which an execution may be amended has no limit. A sale of property may have been made under execution and for years may have been confirmed by the silent acquiescence of all the parties in interest. After time has thus elapsed the execution may for the first time be made subject to objection for some amendable informality.

In such case the court, irrespective of the lapse of time, will either disregard the informality or order the execution to be amended. When the amendment is made the writ has the same force as though issued in due form. Ib., 71. In Galloway vs. McKeithen, 5 Iredell, 12, Galloway and his wife, as administrators of Corbit, began an action of detinue against McKeithen on December 5th, 1838, to recover property of their intestate's estate. The defendant on the trial in 1844 objected to their recovering on the ground that they were not administrators of Corbit at the date of the writ. The facts were that at the March term, 1837, of the County Court, administration was granted to Galloway, but McKeithen who opposed such grant appealed to the Superior Court, which, at the June term of the same year, ordered

the administration should be granted to Galloway and his wife on their giving a bond in the penalty of $8,000, and that a writ of *procedendo* should issue to the County Court to carry this order into effect. This writ did issue. The records of the County Court of December term, 1842, showed that the County Court omitted at the June term, 1837, to comply with the *procedendo*, and on motion it was ordered that the letters of administration issue to plaintiffs and a bond be taken, *nunc pro tunc*, and that the letters and bond should have relation and bear teste as of June term, 1837. The above record of December term, 1842, was introduced by defendants to show the facts, as from the record of June term, 1837; as such record stood in 1844 it appeared that the letters were ordered and bond taken, although in fact no such entries had been then made. The plaintiffs were *nonsuited*, but the Supreme Court reversed the judgment and declared that when the record of 1837 was amended in 1842 it stood as if it had never been defective, and that the affidavits, motions and orders which were made in 1842 were not and ought not to have been incorporated into the amended record of the term of 1837, and were no part of it. In Graham vs. Linn, 4 B. Monroe, 17, where there was a failure to extend a judgment on the record, but execution issued and was returned "*nulla bona*," and afterwards an entry of the judgment was made *nunc pro tunc*, it is said that the object and effect of such an order is to furnish proper evidence of acts properly done by the court, but not properly exhibited by its record, and such evidence is furnished *nunc pro tunc* for the very purpose of supporting those acts which, though the proper consequence of a judgment, would seem to be irregular and void because there is no proper evidence of the judgment. "If the judgment be in fact rendered by the court, but not at the time regularly and fully entered, a *fieri facias* issued

in pursuance of the judgment is not void, but voidable only and capable of complete validation by afterwards making a proper entry of the judgment on the record, showing when it was in fact rendered, entering it now for then.    *  *  *  Although, therefore, the writ of *fieri facias* in this case might have been quashed on motion so long as no judgment appeared on the order book, yet the judgment might, if there were sufficient grounds for it, have been put there *nunc pro tunc* even during the pending of the motion with the effect of removing the ground of quashal and making good the writ and the acts done under it.    And so if the entry *nunc pro tunc* were made on sufficient grounds during the pendency of this trial, such entry, read as a part of the record of the case in which it was made, would have removed all objections to the validity of the execution and the verity of the officer's return thereon, so far as such objections were founded upon the mere fact that there was no judgment on the order book during the life of the execution." The issue of execution and return of the Sheriff in another suit were relied on here as evidence of due diligence upon part of the plaintiffs and as entitling them to the remedy sought in the case in which the opinion was delivered; and it is a fact that there was an error made in a date stated in the order *nunc pro tunc*, and this was corrected on the trial of the second suit.   See also Burnette vs. State, 14 Texas, 455.   In Parker vs. Rugg, 9 Gray, 210, a judgment by default in favor of the latter against the former was adjudged in the common pleas at a term in 1835 or 1836, but by reason of Rugg's omission to furnish the Clerk with the necessary papers the record of the judgment was not completed until 1855 when the court ordered it to be done.   At the same term in 1855 Rugg asked to plead this judgment in set-off to one entered against him in favor of Parker at the term in 1835 or 1836, and was

permitted to do so. "The Court of Common Pleas," says the opinion, "in ordering the record of the judgment of Rugg against Parker to be made up, rendered no new judgment, but only perfected the evidence of the judgment rendered at the December term, 1836. That judgment was therefore in existence at the time of the commencement of this action, and so a proper matter of set-off."

In view of these authorities the effect of the amendment upon the judgment cannot be doubted; it is to be regarded as if no defect had ever existed, and, in law, the only judgment "originally rendered" is that evidenced by the record as amended. We cannot now consider or assume that any other than a judgment such as the amended record shows was ever rendered or intended to be entered. In contemplation of law, no other judgment ever existed, either before, at or since the Sheriff's sale, under the facts of this case—the rights of third persons not being involved.

In Higgins vs. Driggs, 21 Fla., 103, cited for appellant, the *præcipe* was Henry S. Higgins vs. J. S. Driggs, administrator of estate of J. S. Adams. The cause of action upon which the declaration was filed was simply a promissory note of "Ellen F. Adams, executrix of J. S. Adams;" a judgment was entered that the plaintiff recover of the "defendant as administratrix of J. S. Adams, deceased." Upon this the Clerk issued an execution commanding the Sheriff that "of the goods and chattels, lands and tenements of John S. Driggs *as administrator of the estate of John S. Adams*, deceased," he make the amount of the judgment. The plaintiff moved to amend the judgment "so as to have it read and appear of record as against the goods and chattels, lands and tenements of John S. Adams, deceased." This motion was denied. The defendant moved to suspend the execution and it was so ordered.

4

These rulings were affirmed, the first, because there was no cause of action against or binding the estate of John S. Adams, the promissory note being the mere personal obligation of Ellen F. Adams; the second, because it did not appear upon the face of the execution whether it was to be satisfied out of the property of Driggs or the estate of J. S. Adams. As the cause of action was not one against the intestate, no judgment *de bonis testatoris* could have been properly pronounced, or be held to have been intended, and in view of this fact the suspension of the execution was also not only proper, but necessarily followed the refusal to amend the judgment. The more regular the execution had been upon its face the stronger and more urgent would have been the reason for suspending it in view of the protection which such regularity affords an officer executing the writ. Had, however, the declaration been upon a promissory note, made by John S. Adams, it cannot be doubted that the amendment of the judgment and likewise of the execution (if asked for) would have been allowed. The Judge who delivered the opinion in this case says, " The *præcipe*, summons and declaration were also against Driggs, administrator of the estate of John S. Adams, and it would follow that *upon proper proof* the judgment should have been entered against John S. Driggs, as administrator of the estate of John S. Adams, to be levied of the goods, &c., * * * of John S. Adams, &c., and an amendment of any informality in the judgment ought to have been allowed." If the declaration properly described the note of Mrs. Adams we do not see that there could have been any proper proof under it for a judgment *de bonis testatoris*, or, we may add, one *de bonis propriis*. If his meaning is that the declaration did describe an indebtedness of John S. Adams and that if proper proof thereof had been produced the judgment *de bonis testatoris* should have been en-

tered and the amendment allowed, his view sustains the action which this court has taken in affirming the amendment under discussion. The opinion cites decisions affirming the *validity* of a judgment like that in Higgins vs. Driggs when rendered upon an obligation of the testator or intestate, though not approving it as in due form. There is no inconsistency between the *action* of this court in Higgins vs. Driggs, and Adams vs. ReQua. The case of Palmer vs. Palmer, 2 Conn., 462, an action of ejectment, is earnestly commended by counsel for appellant. In it the writ and declaration offered in evidence were in favor of Minor, "administrator of the goods and estate of Ferris Palmer;" the judgment was, Minor, "administrator of the estate of Ferris Palmer, deceased, plaintiff, against Palmer, defendant, in a plea of case demanding 75 dollars," &c., and subsequently throughout the judgment the parties are described simply by the words "plaintiff" and "defendant." The execution recites, "Whereas, Simeon H. Minor recovered" judgment against Palmer and afterwards designates the parties by the words said "creditor" and said "debtor." Under this execution the land was set off to said Minor, under whom the plaintiff in ejectment claimed. It was held that the judgment was in favor of Minor as administrator of Ferris Palmer, but that the execution was in favor of him individually, and that the levy on the land of the judgment debtor and other proceedings under the execution gave Minor no title. If the doctrine of this case is correct and applicable to one where the *defendant* is an administrator we think the effect of it is to sustain the original execution, if not the original judgments, as binding the estate of Adams. We may remark that in Branch vs. Branch, 6 Fla., 344, it is held that the words "adm'r., &c.," are in themselves merely *descriptio personæ* as that to sue in a representative capacity one must describe himself

and make his claim *as* administrator. We find nothing in-consistent with the view we ake of the case before us, in Averett vs. Thompson, 15 Ala., 678, cited by appellant, where an execution leviable of the goods, &c., of " William H. Thompson, administrator of James Colvett " was held to authorize the sale of Thompson's individual property. The view that the execution in Finley vs. Lee, 51 Ga., 482, was " *in totidem verbis,* " or " substantially " the same as that now under consideration is, we submit, a mistake; that execution was against the goods, &c., * * * of Thomas Howell, " executor of William Finley, deceased," and the decree likewise against Thomas Howell, " execu-tor," &c. The words quoted were unsuccessfully relied upon to support the idea that the decree did not bind How ell personally, nor the execution sale pass the title to his individual property. In none of these cases, moreover, had there been any amendment *nunc pro tunc.*

What we have said as to the effect of the amendment *nunc pro tunc* upon the judgments is equally true as to the amendment of the execution. We are not, however, pre-pared to say that a sale made of property of a decedent's estate upon an execution framed in the language which these were in before the amendment was made, and which had been issued upon a judgment properly entered against an administrator to be levied of the property of his intes-tate (which we are now bound to regard as the fact in this case) would not be valid.

In deciding the question of the validity of the execution sales, we are bound to regard the writs of execution, whether we consider them either as amended or as in their original shape, as resting upon perfect judgments leviable of effects of the intestate Adams. Assuming that no amendment of the executions was made, we yet have in each case, resting upon a perfect judgment against Driggs,

as administrator, an execution to be levied of " the goods and chattels, lands and tenements of John S. Driggs, *as administrator of the estate of John S. Adams, deceased.*" Though not in the form it should have been, and though if Driggs, who was admisistrator at the time of the sale, had before the sale asked for a suspension of the executions, they might have properly been suspended, unless the plaintiff had asked for an amendment or the court had of its own motion refused Driggs' motion and ordered an amendment, we think that such an execution resting upon a perfect judgment, (which we have to regard each of the judgments in this case as having always been), was not void, but that it showed a sufficient intent to be leviable of property held by Driggs, not in his personal right, but in his capacity as administrator of Adams, and hence, of the estate of Adams, to sustain a sale of estate property. Moreover, the representative of the estate of Adams at the time of the enforcement of the writs had not by motion to quash or suspend, or otherwise, questioned the sufficiency of these executions, or that they were leviable of the intestate's property. Defects in writs of execution do not vitiate sales, unless they are such as render the writs void and are not amendable. In Sabin vs. Austin, 19 Wisconsin, 421, 443, the latter recovered a judgment against Sabin and purchased land at the execution sale thereunder. The execution did not state the time and place the judgment was docketed, and upon this ground Sabin sought to have the execution and all the proceedings thereon, including the sale and certificate thereof, declared null and void. " If, " says the court, " it was a void process, then of course it conferred no authority whatever upon the Sheriff to proceed under it, and no title could be acquired at the sale. But if the defect did not render the execution void and was an error or defect

which the court might have cured by amendment, then a different rule applies." Holding the defects to be such as were amendable, and that therefore the acts done under it were not void, it is said, "and since the court would have been authorized to amend the execution in this particular, *even on a direct application to set the same aside,* we cannot hold the matters stated in the first cause of action sufficient to entitle the respondent to the relief he asks. In Doe *ex dem.* vs. Lecony, 1 N. J. Law, 111, 131, a *fi. fa.* tested out of term was held not to be absolutely void but amendable, and that whenever process is amendable it will be considered as done whenever the objection is taken. "It is true the amendment was not made when the writ was offered; but that is not necessary, for if it might be amended the court would consider it done." P. 132. "There is a case in 1st Vesey where, after a *ca. sa.* executed, a *fi. fa.* was taken out and a term sold upon it. There was a great irregularity, so much so that Lord Hardwicke said the *fi. fa.* would have been set aside on motion. Yet he held the sale good because the officer might have justified under the writ." P. 133-4. In Sickles vs. Overton, 3 Penn. State, 325, a *venditioni exponas* was held to be amendable by the *præcipe* by inserting the name of one of the defendants during the trial of an ejectment under the sheriff's deed, and a sale under such a writ passes the title. "The writ," say the opinion, "was undoubtedly amendable by the *præcipe,* and we treat a right to amend as an equivalent for actual amendment. But right or wrong the amendment had actually taken place at the time of the trial and we cannot enquire into its propriety. That it was made pending the present action cannot restrict its effect, and there is therefore no semblance of error on the record." In Porter *et al.* vs. Goodman, 1st Cowen, 1, a motion was made to amend the *fi. fa.* which had been levied.

The defects in it were an omission of Porter's name and error in the *teste*. Trespass has been brought by the defendant in *fi. fa.* on the ground that the levy was under a void writ. The amendment was allowed on payment of costs of the motion and of the action of trespass. In Phelps vs. Ball, 1 John. Cases, 31, a *fi. fa.* was amended after it had been returned satisfied, and in Holmes vs. Williams, 3 Caine's Repts., 98, a *ca. sa.* was amended after an action for false imprisonment had been brought. See also Moore vs. Dewey, 3 N. H., 535 ; Lewis vs. Lindley, 28. Ill., 147. In Representatives of Bourdeaux vs. Treasurers, 3 McCord, 142, a motion to arrest a judgment and set aside sale was met by a motion to amend, and it was held that an execution can be amended after a sale of lands had been made under it, the usual words of authority to the Sheriff having been omitted ; that the power is as ample to amend after as before judgment, but will be exercised with more circumspection after judgment. It is stated in the opinion that in Richard vs. Brown, (Douglas, 46,) and in Short vs. Coffin, (Burrows, 2730,) it was held that a judgment may be amended from *de bonis propriis to de bonis testatoris.*

In view of all these authorities we think that the *fi. fa.'s* were not void, but that the sale under them was valid though they were not perfect in form at the time it was made, and we are further of the opinion that the amendment of the executions *nunc pro tunc,* as between the parties, made them as if no defect in them had ever existed, and that upon this point the parties are concluded by the orders *nunc pro tunc ;* it is *res adjudicatu.* In view of the amendment of the judgments and the effects thereof the execution did authorize a levy upon and sale of the lands of John S. Adams, and the amendment of the executions has settled this question between the parties. The executions must have been so defective as not to be amendable

before we can hold that they did not authorize the sale. If they had been so the order allowing their amendment *nunc pro tunc* should neither have been made by the Circuit Judge, nor affirmed by this court; but they were not so.

There is to be found in some opinions a declaration or statement to the effect that a plaintiff cannot acquire title under an erroneous or voidable execution.

An examination of the cases will show that the defects were of a very different character from that in the executions before us. In Bybee vs. Ashby, 7 Ill., 151, the writ was directed to the Sheriff of another county than that of the Sheriff by whom and in whose county the land was sold, and was held to confer upon its face no authority even upon the Sheriff who made the sale, and that all his acts under it were void, and that the defect was not amendable. In Jackson vs. Cadwell, 1 Cowen, 622, the purchase was by one of the plaintiffs in an execution which had been previously satisfied and he had himself previously paid to the Sheriff the other execution upon which the sale was also made. In Waite vs. Dolby, 8th Humphreys, 406, an action of *detinue*, the judgment was that Waite "recover the mare Bollo, if she can be had * * and the damages aforesaid," $10, and that in case said mare cannot be had that the plaintiff recover of the defendant "$135," the value of the mare * * * with the damgages aforesaid, &c. On this judgment the Clerk issued a *fi. fa.* in the usual form for the value of the mare and the damages and costs, and it was levied upon real estate of defendant and Waite purchased it and brought ejectment against Dolby to recover possession of it. There was verdict and judgment for Waite, and Dolby appealed. "It is manifest," says the opinion, "from the form of the judgment and the object in fixing the value [previously stated to

be fixed at the highest price to compel the delivery of the same] that a *distringas* for the thing recovered must be issued in the first instance. How can it be ascertained that the thing cannot be had unless by the return of process, which had issued to obtain it? And the judgment for the money is conditional, if the thing cannot be had; therefore, if execution for the money issue before it is ascertained by a *distringas* that the thing cannot be had, it is certainly erroneous if not irregular and void. It is often difficult to determine whether process be irregular or erroneous only, but we are inclined to regard the execution in this case as irregular and void. " In Weaver vs. Cryer, 1st Devereux (law), 337, referred to in Waite vs. Dolby, the suit was against the officer and plaintiff in a *fi. fa.* which had issued after a year and a day and it was held that the officer was protected, but that the plaintiff who sued out the erroneous *fi. fa.* was liable to the action. In Larkin Keating vs. Heard & Hickerson, 3 Head, 592, the judgment under which the land was sold had been previously paid. None of these cases, we perceive, were instances of mere inartificial expression like that we are considering, and in none was an amendment *nunc pro tunc* made, and in but one of them, Bybee vs. Ashby, was motion to amend made, and in it the irregularity was held to render the writ void and not to be amendable; in two of them the judgments had been previously paid, and of course no amendment entitling a plaintiff to a double satisfaction could be made : in another, Weaver vs. Cryer, the plaintiff was not entitled to his writ, except upon and till after a hearing or opportunity to the defendant to be heard on a *sci. fa.*, and an erroneous proceeding is presented which we do not see that an amendment could cure as between plaintiff and defendant : in Waite vs. Dolby the plaintiff was also not entitled to *fi. fa.* unless accompanied by a *distringas*, and not entitled to an en-

forcement of the former until there was a return of the latter, showing that the mare could not be found, and we are satisfied an amendment would not have been allowed if applied for. Neither of these cases is one of mere clerical misprison in a writ addressed to a proper officer, and issued at a proper time, but in each the error is such as to deprive the writ of all authority to the Sheriff, or the case is one in which the plaintiff was either not entitled to a writ *ex parte*, or had been previously paid his recovery, or not entitled to the enforcement of the writ until another writ had been issued and returned unsatisfied.

Decisions to the effect that a Sheriff's deed executed before the time allowed by statute for redemption of land (Bernal vs. Glim, 33 Cal., 668 ; Gorham vs. Wing, 10 Mich., 486,) are void, or to the effect that a purchaser at a Sheriff's sale, he being also plaintiff in execution and parting with no money, is not entitled to the protection of a *bona fide* purchaser for a valuable consideration (Williams vs. Hollingsworth, 1 Strobhart, 103,) are not decisions of the points involved, nor are they questioned. The case of Allen's administrator vs. Thrall, cited in Smith vs. Howard, 41 Vermont, 74, 79, was, it would seem, one in which a defective execution had been returned unsatisfied, and a motion to amend was made but denied on the ground that the amendment if made might charge the officer returning it, or his bailees, who had already been discharged by reason of the defect, and not one where the amendment was asked to support action taken by officers or rights acquired by parties thereunder. We have not seen the case in full. The general doctrine of the effect of amendments *nunc pro tunc* is too well established to be shaken by it.

In § 340 of his work on executions, Mr. Freeman says: "Whenever the irregularity is such that the defendant can be deemed to have waived it by his laches, or where it

is of such a character that it can be cured by amending the writ, we think it cannot render the sale void, although the plaintiff may have purchased," we are of the opinion that the sale was valid and that as between the parties the amendment of the judgment and execution has adjudicated the question.

II. Appellant also insists that the Sheriff's deed to Higgins does not in point of fact convey any interest or estate in the land which belonged to John S. Adams at the time of his death. It is true that this instrument is inartificially drawn ; it describes the executions as issued upon wo judgments wherein Wakefield and ReQua, for the use of Driggs, are respectively plaintiff, and "John S. Driggs, administrator of the estate of John S. Adams," is defendant, and as issuing from Duval county Circuit Court, and recites that he, the Sheriff, did " levy on and seize all the estate, right, title and interest which the said defendant had of, in and to the property hereinafter described," and that " the said property was struck off " to Higgins, and it grants, bargains, sells and conveys unto him and his heirs, " all the estate, right, title and interest which the said defendant, *the said estate of J. S. Adams, deceased*, had at the date of the respective judgments aforesaid, or at any time afterwards" of, in and to the land. We think, looking at the whole instrument, that the purpose and meaning of the Sheriff was to convey that interest or title in said land which at the rendition of the judgments was a part of the estate of John S. Adams. The words italicised explain the understanding, meaning and design of the Sheriff as to which and whose property he had levied on and had sold and was conveying, and there is no question but that it was done on writs connecting themselves with the judgments, which were subsequently

amended *nunc pro tunc.* Steward vs. Preston, 1 Fla., 10. The distinction between the decision in Griffin vs. Wilson, 22 Fla., and this, is plain.

Judgment is affirmed.