WILLIAM L. CLIFTON, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed August 12, 1918.

1. A judgment imposing a fine and containing a provision that in default of the payment of the fine the defendant be confined in the penitentiary is defective, the alternative sentence should be confinement in the County Jail.

2. A motion in arrest of judgment reaches only such errors as appear upon the record and when addressed to the indictment or information is effective only when they wholly fail to charge any offense or their allegations are so vague and uncertain as to embarrass the defendant in the preparation of his defense or expose him aftter acquittal or conviction to substantial danger of another prosecution for the same offense.

3.  A motion in arrest of judgment does not raise the question of the sufficiency of the evidence, nor does it reach a question of variance between the allegation and proof.

4.  An indictment or information deemed to be defective in point of form because of a faulty allegation of some material fact or element in the crime attempted to be charged should be attacked by demurrer or motion to quash. The point should not be deferred until after verdict and then incorporated in a motion in arrest of judgment.

5.  An indictment for obtaining money under false pretenses which alleges that the prosecutor was induced to pay and the defendant did then and there receive, the money is sufficient upon a motion in arrest of judgment to show a delivery to and receipt by the defendant of the money alleged to have been obtained.

6.  The County School Fund is a County fund, the moneys in which are set apart for a special purpose, *viz.*, the maintenance and support of public free schools. The disbursement of the fund is a duty or trust committed to the County Board of Public Instruction, which Board is prohibited by the Constitution from disbursing the money in such fund for any other purpose than the maintenance and support of public free schools.

7   To constitute the statutory offense of obtaining property by false pretenses there must not only have been a false representation by the defendant of a part or existing fact or circumstance, and such representation believed by the other party, but the latter party must have parted with his property to the defendant *because* of the representation.

8.  An indictment against one for obtaining money by false pretenses should allege the connection or relation between the representation or statement and the delivery of the property by the prosecutor, when it does not appear that there is a natural connection between the two.

9.  A false statement or representation of a fact by one per son to another for the, purpose of obtaining property from the latter, must be of such nature or character as that if the fact was as represented it would place upon the latter a duty, obligation or desire to part with the property de maneded. This is the so-called causal relation between the representation or statement and the delivery of the prop erty and is an essential element of the crime of obtaining money or property by false pretenses.

10. In an indictment for obtaining property by false pretenses it is not sufficient to allege merely that the defendant's statement or representation induced the prosecutor to part with his property, but the causal relation must either ap pear because of the natural connection between the state ment and the delivery of the property or it must be alleged specifically.

11. Public boards or commissions charged by law with dis bursing public moneys have no lawful authority to part with the public money in their charge except for the pur poses designated by law. A statement of fact, therefore, made to such board which does not place upon the board under the law the duty or obligation to disburse the public fund or a portion of it in their charge, cannot in law be the subject of a false representation so as to constitute the crime of obtaining money or property by such means.

12. The County Superintendent of Public Instruction has no authority under the law to make a contract in behalf of the County Board of Public Instruction without the latter's express authority to pay a stenographer in the Superin tendent's office for services rendered to the latter either in his proviate or official character, that will create an obliga tion or duty on the part of the County Board of Public Instruction to pay such expense out of the County School Funds. Whether the County Board has the power to au thorize the County Superintendent to employ a stenog rapher for any special purpose to be paid out of the County

School Fund not decided, because the indictment in this case neither states such to be the fact, nor for what purpose the stenographer was employed.

Writ of Error to Circuit Court for Polk County; John S. Edwards, Judge.

Judgment reversed.

*R. B. Huffaker* and *Wilson & Boswell,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *C O. Andrews,* Assistant, for the State.

ELLIS, J.—The Plaintiff in Error, who will be referred to herein as the defendant, was convicted of the offense of obtaining money from the County of Polk under false pretenses, and comes here by writ of error.

The indictment, omitting many of the formal parts, is as follows:

"The Grand Jurors of the State of Florida, inquiring in and for the body of the County of Polk, upon their oaths present that William L. Clifton on the 6th day of July, A. D. 1917, in the County and State aforesaid, unlawfully, designedly and by a false pretense and with intent then and there to defraud the County of Polk in the State of Florida, did falsely represent and pretend to the Board of Public Instruction of Polk County, Florida, that he, William L. Clifton, then and there Superintendent of Public Instruction of said county and Secretary of said Board of Public Instruction, had hired and agreed to pay Marie Franklin as stenographer in the office of the said Board of Public Instruction, the sum of Fifty Dollars per month for services as such stenog-

rapher, and did then and there by color and by means of said false pretense induce the said Board of Public Instruction to issue its warrant for the sum of Fifty Dollars, payable to the order of the said Marie Franklin out of the funds and money of the County of Polk aforesaid; and he, the said William L. Clifton, did then and there take and receive said warrant and secure the endorsement of the said Marie Franklin thereon, and did thereafter cash the same and obtain thereon the sum of Fifty Dollars of the moneys and property of the said County of Polk, and deliver to the said Marie Franklin only the sum of Thirty Dollars thereof; whereas in truth and in fact, he, the said William L. Clifton, had not then and there hired and employed the said Marie Franklin as such stenographer at and for the said sum of Fifty Dollars per month, but on the contrary had hired and employed the said Marie Franklin as such stenographer at and for the sum of Thirty Dollars per month, and said Board of Public Instruction was then and there indebted to the said Marie Franklin only in the sum of Thirty Dollars and not in the sum of Fifty Dollars, as was represented and pretended falsely by the said William L. Clifton; and that he, the said William L. Clifton, then and there well knew that the representation so falsely made and pretended by him that he had hired the said Marie Franklin as such stenographer for the said Board of Public Instruction of said county at and for the sum of Fifty Dollars per month was false, and he, the said William L. Clifton, then and there made such false pretenses and representations for the purpose of defrauding the said County of Polk. And that the said Board of Public Instruction believing the said false representations to be true and relying thereupon as true were thereby induced to draw its said warrant for the sum

of Fifty Dollars payable to the order of Marie Franklin and to deliver the same to the said William L. Clifton. And so the said William L. Clifton did in manner aforesaid and by the making of such false pretense and representation obtain of and from the Board of Public Instruction of Polk County, Florida, the sum of Twenty Dollars of the money and property of the said County of Polk and State of Florida, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Florida."

There was a verdict of guilty. A motion in arrest of judgment and a motion for a new trial were made and overruled. Thereupon the court entered the following judgment: "It is the sentence of the court that you William L. Clifton pay a fine of Three Hundred Dollars and the costs of this prosecution, and in default thereof that you be confined in the State Penitentiary at hard labor for a period of one year."

This judgment was erroneous because the sentence being to pay a fine, the alternative sentence of imprisonment should have been confinement in the county jail. See Gen. Stats., 1906, Secs. 4011-4012, Florida Compiled Laws, 1914; Thomas v. State, 74 Fla. 200, 76, South. Rep. 780.

One of the assignments of error rests upon the order overruling the motion in arrest of judgment. The motion contained three grounds: First, the indictment charged no offense under the laws of Florida; second, it was vague, indefinite and uncertain in that it did not sufficiently allege and describe the ownership of the property alleged to have been secured, nor did it sufficiently allege the person defrauded by the defendant, and, third, because the State failed to show by the "testimony" that

the defendant secured any property belonging to the County of Polk.

A motion in arrest of judgment reaches only such errors as appear upon the record and when addressed to the indictment or information is effective only when they wholly fail to charge any offense or their allegations are so vague and uncertain as to embarrass the defendant in the preparation of his defense or expose him after acquittal or conviction to substantial danger of another prosecution for the same offense. See Smith v. State, 75 Fla. 468, 78 South. Rep. 539; Smith v. State, 72 Fla. 449, 73 South. Rep. 354; Mills v. State, 58 Fla. 74, 51 South. Rep. 278; Barber v. State, 52 Fla. 5, 42 South. Rep. 86; Barineau v. State, 71 Fla. 598, 72 South. Rep. 179; Adams v. State, 72 Fla. 32, 72 South. Rep. 473.

A motion in arrest of judgment does not raise the question of the sufficiency of the evidence, nor does it reach a question of variance between the allegation and proof. See Mills v. State, *supra;* McClerkin v. State, 20 Fla. 879; McDonald v. State, 46 Fla. 149, 35 South. Rep. 72.

Applying these rules to the motion in arrest of judgment, we think the second and third grounds of the motion should not be considered. The third ground raises a question which involves a consideration of the evidence and the second ground, one which should have been presented in a motion to quash the indictment instead of postponing it to the end of the trial.

We do not regard the allegations of the indictment as to the ownership of the property obtained or as to the person defrauded to be so vague, indefinite and uncertain as to mislead or embarrass the defendant in the preparation of his defense nor expose him to substantial danger of another prosecution for the same offense.

The indictment clearly and distinctly alleges—at least with sufficient clearness to escape the criticism that the language misleads—that the defendant falsely represented to the Board of Public Instruction of Polk County, that he, the defendant, in his capacity of Superintendent of Public Instruction had hired and agreed to pay a stenographer in his office the sum of fifty dollars per month, when in fact he had agreed to pay the stenographer only thirty dollars per month. That upon this false pretense or representation he obtained from the Board of Public Instruction a warrant upon the county funds for fifty dollars payable to the order of the stenographer and having obtained the indorsement of the warrant by that person, the defendant caused the warrant to be "cashed," and paying the stenographer thirty dollars retained the remainder, twenty dollars.

If there is any uncertainty or vagueness about the indictment in this regard, it should have been pointed out by a motion to quash instead of holding the point in reserve to be used at the end of the trial in the event of a conviction, and then seek by this means to unravel the entire proceeding and thus obtain a second chance at exoneration.

It is true that the indictment fails to allege particularly the means adopted by the defendant in making to the Board of Public Instruction the false representation as to the contract with the stenographer. Whether the defendant accomplished the deception by written or spoken word or whether by conduct, deeds or pantomime is left to surmise; but the fault is one of form rather than substance and should have been attacked at the opening of the trial rather than at its end, for the reason many times expressed by this court.

The first ground of the motion asserts that the indict-

ment charges no offense under the laws of the State. This ground is ably supported by counsel for the defendant in their brief, and was forcefully presented in the oral argument.

It is contended that it is not alleged that either the warrant or money was delivered by the "prosecutor" to the defendant. The indictment alleges that the Board of Public Instruction was induced to draw its warrant and the defendant did then and there take and receive it, and "did thereafter cash the same and obtain thereon the sum of fifty dollars," etc. Upon a motion in arrest of judgment we think these allegations were sufficiently clear to show a delivery to and receipt by the defendant of both warrant and money. It is also contended that the ownership of the money is not properly laid in the County of Polk. That the allegations of the indictment show that the money was the property of the Board of Public Instruction of the County of Polk, which it is said is a corporation, may sue and be sued and in a suit to recover the money would be the "only proper plaintiff."

If this contention is true of course the indictment is defective.

The case of Jones v. State, 22 Fla. 532, is cited by counsel in support of the principle that in an indictment for falsely personating another and obtaining money from a third person, the ownership of the property obtained should be laid in such person as could maintain a civil action of trespass therefor. The indictment alleges that the funds out of which the warrant was to be paid were the property of the County of Polk, and that the money which the defendant thus obtained through the Board of Public Instruction was the property of the county. This is a sufficiently clear allegation as to ownership in the county. But counsel insist that

because the Board of Public Instruction drew a warrant to pay the salary of a stenographer for the Superintendent of Public Instruction, that it drew the warrant upon school funds, (which the Constitution ordains "shall be disbursed by the County Board of Public Instruction solely for the maintenance and support of public free schools"), and that the School Fund is the property of the Board of Public Instruction. Even assuming that the warrant was drawn upon the school fund to pay a stenographer for services rendered to the Superintendent, a county officer, whose duties are prescribed by law and whose salary is regulated by statute, it does not follow that the county was not the owner of the fund. The County School Fund is a fund of the county. Public education is a function of the State government. For convenience the funds are gathered by counties and disbursed by County Boards of Public Instruction. While the statute constitutes each board of public instruction a corporation and vests in such boards the title to the school property of the counties, the school fund is a county fund. It is owned by the county to be disbursed by a certain board or corporation solely for certain purposes.

The money, raised by taxation by the counties for the support of public free schools, the county's proportion of the interest of the State School Fund and its portion of the one mill tax and all poll taxes collected in the county are designated by the Constitution as constituting the County School Fund. It is a special fund set apart for a specific purpose expressly limited by the words "maintenance and support of public free schools." In the maintenance and support of public free schools the Constitution and the Legislature creates certain State and county offices and prescribes the duties of

the officers. Among other duties that the Superinten-
dent of Public Instruction is requierd to perform he
serves as the Secretary of the Board and for such ser-
vices he is compensated out of the County School Fund
by a salary graded according to the annual receipts of
the county for school purposes.

"The fact that the school fund is disbursed for school
purposes by county officers does not distinguish it from
other so-called county funds, which, like the school fund,
are collected by county officers, held in the county treas-
ury and disbursed through the agencies of the county for
State purposes." See Middleton v. State, 74 Fla. 234,
76 South. Rep. 785.

It is contended that the indictment is fatally defective
in failing to allege a sufficient reason why the Board of
Public Instruction parted with the county's money upon
the alleged false representation of the defendant.

What relation existed between the defendant and the
Board by virtue of which the defendant's representation
that he had employed a stenographer at a certain sal-
ary entitled him to receive from the county out of its
funds the money demanded? What duty rested upon
the Board to honor such demand? The board had no
power to disburse the County School Fund except for
public school purposes. It cannot be inferred that the
employment of a stenographer by the County Superin-
tendent to perform duties which the law casts upon him
creates an obligation upon the county to be paid out of
its funds and casts a duty upon the Board of Public In-
struction to pay the salary by warrant upon the County
School Fund as an item of expense chargeable to the
maintenance and support of the public free schools. How
then was the Board of Public Instruction deceived by
the defendant's statement? The mere relation of Super-

intendent and Board was not' enough. At best the statement as appears from the indictment could be nothing more than a falsehood. But the Board should not be deceived by every falsehood its members may hear.

The school funds under our Constitution are to be regarded as a sacred trust; and the provisions of law safeguarding expenditures from such funds should be strictly construed and the mandate of the Constitution enforced. See Pennock v. State ex rel. Hood, 61 Fla. 383, 54 South. Rep. 1004; McKinnon v. State ex rel. Davis, 70 Fla. 561, 70 South. Rep. 557.

In the latter case it was held that the employment of attorneys by the County Board of Public Instruction to conduct litigation against the Superintendent to compel him to countersign warrants to pay teachers' salaries is not such a school purpose as will warrant payment therefor from the county school funds. It is even more difficult to perceive how the employment by the County Superintendent of a stenographer to render for · him services of either a private character or services which the law requires him personally to perform, constitutes a school purpose as will warrant payment therefor from the county school funds. And the Board was authorized to draw warrants only for public school purposes. It was no more the duty of the Board of Public Instruction to issue its warrant to pay the salary of a stenographer employed by the Superintendent than it would have been its duty to pay a doctor's bill for him in the event of his illness that he might the sooner return to his duties. It is not that the Superintendent's services are deemed by the Board to be worth more than the salary of a secretary or stenographer, that is for the Legislature to say and make provision for the payment of such expense out of other funds. The duties of the Superin-

tendent· are prescribed by law and for discharging those duties the law provides payment for his services: To relieve him of any of those duties and cast them upon stenographers, secretaries and other employees and pay them out of the school funds is merely an indirect way of increasing the compensation of the Superintendent above that provided by law.

What, then, was the causal relation between the defendant's statement that he had employed a stenographer at a certain salary and the issuing by the Board of a warrant for the monthly stipend? The Superinten is not authorized by law to make contracts for the Board of Public Instruction, particularly when such contracts are intended for his personal benefit in relieving him of duties which the law casts upon him as a county officer.

"To constitute the statutory offense of obtaining property by false pretenses, there must have been a representation by the defendant of a past or existing fact or circumstances; it must have been in fact a false representation; it must have been known by him to be false; it must have been made with intent to defraud; it must have been believed by the other party; and he must have *parted with his property to the defendant because of it.* If an indictment for this offense fails to state any one or more of these facts or circumstances it fails to charge the offense." See Clark on Crim. Proc. 153-154; State v. Whedbee, 152 N. C. 770, 67 S. E. Rep. 60, 27 L. R. A. (N. S.) 363.

There is an apparent conflict of authority as to the extent to which the causal connection between the false pretense and the loss must be set out in the indictment. In some States the courts hold that the indictment must contain all the material facts and circumstances which the prosecutor would be bound to prove in order to pro-

duce a conviction. And where there is no natural connection between the facts to show just how or why the injured party was induced to part with his property, such facts or circumstances must be fully set out in the indictment as will lead to a necessary legal conclusion of guilt. This court in the case of Jones v. State, *supra,* held in accordance with this rule.

In dealing with an official board, whose powers are derived solely from the statute and whose warrants may be lawfully drawn only for expenses authorized by law, the rule is particularly applicable. It would be idle to contend that a false statement by one to such a board concerning an expense not authorized by law to be incurred is sufficient to deceive the board into the act of parting with the county's money. Such a holding would justify the Board in an expenditure not authorized by law. There is nothing in this indictment to show that the expense was authorized by law.

In Arkansas it is held that a defect in an indictment for obtaining money by false pretenses arising from failure to show the connection between the false pretense and the payment of the money is a material one and is not cured by verdict. See Roberts v. State, 85 Ark. 435, 108 S. W. Rep. 842; Enders v. People, 20 Mich. 233; Johnson v. State, 75 Ind. 553; Jones v. State, 50 Ind. 473.

In the case at bar there is obviously no natural connection between the alleged statement of the defendant that he had "hired" and agreed to pay a stenographer in his office a certain sum and the issuing of a warrant by the Board payable to that person for such sum, to show why the Board would be induced to pay the county money to such person upon the strength of such statement. The indictment alleges that the warrant was made payable to the order of the person employed as stenographer

and delivered to the defendant. There is no allegation to show that any statement, representation, word or act was uttered or performed by the defendant to induce the Board to deliver the warrant to the defendant. The act of the delivery of the warrant to the defendant appears not to have resulted from the defendant's statement. It is not sufficient to allege merely that such statement induced the Board after drawing the warrant to deliver it to the defendant. See 19 Cyc. 429.

We are of the opinion, therefore, that the indictment was fatally defective and the motion in arrest of judgment should have been granted.

There are a number of other assignments of error which need not be discussed, as the judgment must be reversed for the defect in the indictment pointed out.

The judgment of the court below is hereby reversed.

BROWNE, C. J., AND TAYLOR, J., concur.

WHITFIELD AND WEST, J. J., dissent.