Jack E. Sawyer, *Plaintiff in Error,* v. The State of Florida, *Defendant in Error.*

En Banc.

Opinion Filed June 29, 1927.

Petition for Rehearing Granted; Judgment Re-affirmed August 1, 1927.

62

*Burton G. Henson,* for Plaintiff in Error;

*J. B. Johnson,* Attorney General, and *H. E. Carter,* Assistant, for the State.

BROWN, J.—Plaintiff in error was convicted in the criminal court of record of Hillsborough County, upon an information running in the name of and filed and sworn to by the "assistant solicitor for the county of Hillsborough, prosecuting for the State of Florida, in said county," of the offense of breaking and entering a store building, and sentenced to a term of three years and six months in the State Prison; to which judgment writ of error was sued out.

The first assignment of error is addressed both to the refusal to grant the motion for continuance and the motion for a severance. The motion for continuance did not measure up to the requirements herefore laid down by this Court, and the court below cannot be held to have abused

its discretion in denying such motion. Moore v. The State, 59 Fla. 23, 52 So. 971. See also other cases cited on pages 460, Vol. 1, Fla. Digest. This makes it unnecessary for us to consider the other alleged error grouped under this single assignment, the rule being that where an assignment of error attacks more than one ruling of the Court it will fail unless all of the rulings thus attacked are erroneous. However, there was no reversible error in denying the motion for severance. See Daniels v. The State, 57 Fla. 1, 48 So. 747; Roberson v. The State, 40 Fla. 509, 24 So. 474; Ballad v. The State, 31 Fla. 266, 12 So. 865.

The second assignment of error relates to the denial of the motion to correct the record so as to make it show that the court had allowed ninety days for the presentation of bill of exceptions. This motion was sworn to by the plaintiff in error and supported by an affidavit of his attorney to the effect that at the time motion for new trial was overruled he had inquired of the court as to what time would be allowed for preparing and securing the approval of a bill of exceptions, whereupon the court stated that counsel should have "the usual time," and that counsel took the liberty of inserting on the record adjacent to the order of the court the following: "90 days to file B. E." This motion to correct the record was made several weeks after the term of court expired. The question turns upon the recollection of what had transpired as between the court and counsel, and while the record does not disclose for what reason the court denied the motion, the situation is not one which authorizes this Court to hold that the lower court committed error. Certainly we would not be warranted in assuming that the presiding judge did not have as good a recollection of what transpired at the time as had the attorney whose affidavit was filed. Furthermore, even if the court had orally stated that counsel would be

allowed the "usual time," as claimed by counsel, he might have meant by this the time allowed by law in the absence of a specific order fixing the time, which time expired with that term of court. Furthermore, unless the court at the time intended to include in its order an allowance of ninety days for settling the bill of exceptions, it would not have been proper for the court after the expiration of the term to have supplied or included such a provision. The general rule is that formal and clerical amendments may be made at any time, but that substantial or judicial amendments or changes in a judgment cannot be made after the expiration of the term. If anything has been omitted from a judgment or order which is necessarily or properly a part of it, and which was intended and understood to be a part of it but failed to be incorporated in it through negligence or inadvertence of the court or the clerk, the omission may be supplied by an amendment or correction after the term. But if the proposed amendment is a mere afterthought, something not really intended at the time, and which formed no part of the judgment or order as originally intended and pronounced, it cannot after the expiration of the term be brought in by way of amendment *nunc pro tunc* or otherwise. Adams v. Higgins, 23 Fla. 13, 1 So. 321; McGriff v. Reid, 37 Fla. 51, 19 So. 339; Nichols v. Walton, 82 Fla. 385, 90 So. 157, 15 R. C. L. 679, 34 Cyc. 235. The second assignment of error must therefore fail.

The third assignment of error is based upon the denial by the lower court of a motion for an extension of time within which to file a transcript of the record in this Court. The lower court, having no authority to grant such an order, manifestly was without errror in denying this motion, which, if made at all, should have been addressed to the appellate court.

The fourth assignment of error reads; "That the court erred in refusing to restrain the execution of judgment in this case; and to vacate the judgment in this case; and to quash the purported information filed in this case." This assignment was evidently intended to be made to the denial of the petition and motion combined, filed by the plaintiff in error on September 17, 1926, "to restrain execution and to vacate judgment and to quash information" and also to the denial by the court of the motion filed on October 29, 1926, designated as "supplementary petition to restrain execution and motion to vacate judgment and to quash information." Despite the rather informal manner of making this single assignment of error to two separate and distinct rulings of the court below, we have given due consideration to all questions thereby raised which have any merit.

One of the grounds set up in the motions or petitions above mentioned was that the verdict was fatally defective and did not constitute a basis for the judgment. The plaintiff in error was informed against as "Jack E. Sawyer, alias Charles Sawyer," jointly with Edward Malanoski and Christ Spinsen. The verdict read: "We the jury find the defendant Jack E. Sawyer, alias Charles Sawyer, guilty as charged in the first count of the information, so say we all," signed by the foreman.

Both these motions were filed some weeks after the expiration of the term of court during which the defendant was tried and verdict and judgment rendered. It is true a motion for new trial was filed on June 21, 1926, within four days after the trial, but the alleged defect in the verdict was not made one of the grounds thereof, nor was the objection to the form of the verdict presented to the court by a motion in arrest of judgment. The denial of the motion for new trial cannot be here questioned, as

it has been settled by a long line of decisions of this Court that a motion for new trial is not a part of the record proper and must be embodied in a bill of exceptions to the ruling thereon. As has been already mentioned, there is no bill of exceptions in this case. While the objection to the form of verdict was not properly and seasonably brought to the attention of the court so far as this record shows, we might remark in passing that this verdict is not fatally defective. Verdicts in criminal cases should be certain and free from ambiguity, but if the intention is clearly manifested, bad spelling or faulty grammar will not vitiate them. A verdict is not defective as to the identity of the person convicted of the crime of which he was found guilty when by reference to the record it is made clearly to appear that the jury intended to find the particular defendant guilty of the crime charged. See 1 Fla. Digest, page 626, and cases cited; Thomas v. The State, 74 Fla. 200, 76 So. 780; Richardson v. State, 72 Fla. 154 — So. —, 38 Cyc. 1882. The verdict is a part of the record proper, and alleged defects in the form of the verdict should be determined in the trial court upon motion in arrest of judgment, which is the proper way to assail it. Taylor v. The State, 88 Fla. 555, 102 So. 884, and cases cited. It might also be observed that if the vowel "a" in Sawyer be given the same broad pronunciation as in the words all, ball, tall, etc., the word "Sayer" would be *idem sonans* with Sawyer. 14 R. C. L. 207. Nor can there be any doubt as to which of the defendants was intended by the jury to be found guilty by this verdict. The names of the other two defendants, who it seems pleaded guilty at the close of the testimony, are entirely dissimilar to that of this defendant.

Returning to a consideration of the original and supplementary motions above mentioned, filed by the defend-

ant in the court below after the expiration of the term in which the trial was had and the judgment rendered, the only grounds set forth in these motions which have sufficient merit to call for consideration by this Court, are those going to the authority of the "assistant solicitor" to sign, make oath to and file the information upon which plaintiff in error was tried. The charge contained in the information was a felony, and it is first contended that under Section 10 of the Declaration of Rights contained in the Constitution of 1885, the plaintiff in error could only have been proceeded against upon an indictment by a grand jury, when that Section is construed in connection with the provisions of the State and National Constitutions guaranteeing the equal protection of the laws. Said Section 10 reads as follows:

"No person shall be tried for a capital crime or other felony, unless on presentment or indictment by a grand jury, except as is otherwise provided in this Constitution, and except in cases of impeachment, and in cases in the militia when in active service in time of war, or which the State, with the consent of Congress, may keep, in time of peace."

The words "except as otherwise provided in this Constitution" in the foregoing Section evidently refer to, and must be construed in connection with, Section 28 of Article V of the same Constitution, which is the last of several sections dealing with criminal courts of record and proceedings therein. Section 24 of Article V provides that "there shall be established in the County of Escambia, and, upon application of a majority of the registered voters, in such other counties as the Legislature may deem expedient, a criminal court of record." Section 25 provides that said courts shall have jurisdiction of all criminal cases not capital which shall arise in said counties

respectively; Section 26 provides that there shall be six terms of said courts in each year; Section 27 provides that "there shall be for each of said courts a prosecuting attorney, who shall be appointed by the governor and confirmed by the Senate, and who shall hold his office for four years. His compensation shall be fixed by law."

Then follows Section 28, which reads as follows:

"All offenses triable in said court shall be prosecuted upon information under oath, to be filed by the prosecuting attorney, but the grand jury of the circuit court for the county in which said criminal court is held may indict for offenses triable in the criminal court. Upon the finding of such indictment the circuit judge shall commit or bail the accused for trial in the criminal court, which trial shall be upon information."

The contention of plaintiff in error is, in effect, that in so far as these sections of the Florida Constitution, and the statutes enacted in pursuance thereof, operate to permit the trial of persons in felony cases upon informations in those counties where criminal courts of record are established, whereas in other counties of the State, not having such courts, persons charged with felonies can only be tried upon the indictment of a grand jury, it amounts to a denial of the equal protection of the laws, and due process of law, as guaranteed by both the State and Federal Constitutions. It is further contended that the language of Section 28 indicates an intention that even in criminal courts of record persons charged with felonies must first be indicted by a grand jury before trial can be had upon informations filed by the prosecuting attorney upon the basis of such indictments. This latter contention is palpably unsound. These Sections expressly provide that all offenses triable in such criminal courts of record, that is, all criminal cases except capital cases,—shall be prosecuted

upon information. The mere fact that provision is also made that the grand jury of the circuit court may retain the power to indict for offenses triable in such criminal courts of record and that the accused be committed or bailed by the circuit judge for trial in such criminal court upon information, does not mean that no person can be prosecuted upon information in such criminal court of record until he has first been indicted by the grand jury in the circuit court for that county. To so hold would do violence to the plain meaning of the Constitutional provisions. The purpose of Section 28 was primarily to provide for prosecutions upon information in the criminal courts of record of all felonies less than capital, but, at the same time, to retain the power of the grand juries to indict for offenses triable in such court. It was deemed wise that the initiation of prosecutions, even in counties where criminal courts of record were established, should not be confined solely to the filing of informations under oath by the prosecuting attorney.

The idea that citizens or residents of this State have a constitutional or vested right to indictment by a grand jury in all felony cases, and that in those counties where criminal courts of record are established they are deprived of this right under Section 28 of Article V of the Constitution, and hence denied the equal protection of the laws, or of due process, is based upon a fallacy. The provision of the Fifth Amendment to the Federal Constitution, that ''no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury,'' is a limitation upon the Federal Government and has no reference whatever to state action. And, as above shown, our State Constitution expressly provides for prosecutions by information in felony cases. It is true that at common law prosecution by information

was generally confined to misdemeanors. 1 Bishop's Crim. Proc., p. 103, 31 C. J. 625, *et seq.* And other prosecutions were generally by indictment, but the constitutional declaration that no person shall be deprived of his liberty except by due process of law does not require that prosecutions for felony in state courts shall be by indictment. In a case where the state authorized prosecutions for felonies by information, after examination and commitment by a magistrate, without indictment by a grand jury, a conviction for murder in the first degree upon an information was upheld on appeal to the Supreme Court of the United States. Hurtado v. People of California, 110 U. S. 516, 28 L. Ed. 232. It was also held by the same court that the privileges of a citizen of the United States do not include the right of trial by jury in a state court for a state offense, or the right to be exempt from any trial in such case for an infamous crime unless upon presentment by a grand jury. Maxwell v. Dowe, 176 U. S. 581, 44 L. Ed. 597, 6 R. C. L. 467. Statutes providing for the prosecution of felonies by information which were formerly prosecuted by indictment, are generally considered as merely changing the mode of procedure, and not *ex post facto* as to offenses committed prior to the enactment of such statutes within the meaning of the Federal Constitution prohibiting a state from passing *ex post facto* laws. State v. Kyle 166 Mo. 287, 65 S. W. 763, 56 L. R. A. 115; *in re* Wright, 27 Pac. 565, 13 L. R. A. 748; Note, 38 L. R. A. (N. S.) 600. A person has no vested right in any particular remedy, and he cannot insist on the application to the trial of his case, whether civil or criminal, of any other than the existing rules of procedure. Statutes making changes in the remedy or procedure are always within the discretion of the law making power, and are valid so long as they do not deprive the accused of any substantial or constitutional

right, or conflict with specific and applicable. provisions of the Federal Constitution. A state may abolish old remedies and substitute new, or may abolish even without substitution if a reasonable remedy remains, but it cannot deny a remedy entirely. 6 R. C. L. 294-5, and cases cited.

That clause of the Fourteenth Amendment to the Federal Constitution which provides that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to secure to all persons in the United States the benefit of the same laws and the same remedies, whether as between states, or as between different sections of the same state. See collation of authorities in 6 R. C. L. 429, and 12 C. J. 1149, 1150, 1157.

In the case of Bowman v. Lewis, 101 U. S. 22, 25 L. Ed. 989, the court had under consideration whether or not the system of appeals under the Constitution and the laws of Missouri constituted a denial of the equal protection of the laws. By the Constitution and laws of Missouri, a court called the St. Louis Court of Appeals had exclusive jurisdiction in certain cases of all appeals from the circuit courts in St. Louis and some adjoining counties, while the Supreme Court had jurisdiction of appeals in like cases from the circuit courts of the remaining counties of the state. The Federal Supreme Court held that this adjustment of the appellate jurisdiction was not forbidden by anything contained in the Fourteenth Amendment. One paragraph of the opinion reads as follows: "We might go still further, and say with undoubted truth, that there is nothing in the Constitution to prevent any state from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City, and the surrounding counties, and the common law and its method of procedure

for the rest of the state, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the 14th Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the state should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.'' See also State v. Butt, 25 Fla. 258, 5 So. 597.

Recurring to the question whether we have here anything contrary to due process of law, which is not only guaranteed by our Constitution, both State and Federal, but came down to us from *Magna Charta* itself, we quote a paragraph from the able opinion of Mr. Justice Mathews in the case of Hurtado v. California, *supra;* ''The Constitution of the United States was ordained, it is true, by descendants of Englishmen, who inherited the traditions of English law and history; but it was made for an undefined and expanding future, and for a people gathered and to be gathered from many nations and of many tongues. And while we take just pride in the principles and institutions of the common law, we are not to forget that in lands where other systems of jurisprudence prevail, the ideas and processes of civil justice are also not unknown. Due process of law, in spite of the absolutism of continental governments, is not alien to that Code which survived the Roman Empire as the foundation of modern civilization in Europe, and which has given us that fundamental maxim of distributive justice, *Suum cuique tribuere.* There is nothing in *Magna Charta,* rightly construed as a

broad charter of public right and law, which ought to exclude the best ideas of all systems and of every age; and as it was the characteristic principle of the common law to draw its inspiration from every fountain of justice, we are not to assume that the sources of its supply have been exhausted. On the contrary, we should expect that the now various experiences of our own situation and system will mold and shape it into new and not less useful forms.''

The history of the grand jury system will demonstrate that its functions have not always been uniform; that while it is a body of very ancient origin, its officers were not always the same. At first it was a body which not only accused, but tried, public offenders. At a later period it became an informing and accusing tribunal only, without whose previous action no person charged with a felony could, except in special instances, be put upon trial. At times it stood in England as a barrier against oppressive prosecutions by the crown, and it came to be regarded as an institution by which the subject was rendered secure against unfounded prosecutions in the name of the sovereign. ''The institution,'' says Mr. Justice Field, ''was adopted in this country, and is continued, from considerations similar to those which gave to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizens against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity.'' The grand jury continues with us as an accusatorial body, the number of members which varies in the several states, and its sittings and deliberations are in secret, usually *ex parte;* hence lacking in the primary essentials of due process, but this right is reserved to the accused upon his final trial by a jury of his peers. State v.

Tucker, 36 Ore. 291, 51 L. R. A. 246. In the case just cited it was held that the equal protection of the laws was not denied by an act authorizing prosecutions to be commenced by informations filed by the district attorney except when the court deems it advisable to convene a grand jury, thereby leaving it to the district attorney and the court to determine which method the prosecution should follow.

While the grand jury is thus an institution of ancient lineage and renown and has fulfilled a useful function, both in the country of its birth and in this country, it can hardly be said that its value as a bulwark against the oppression of the sovereign—the very thing which did so much to establish its popularity as a common law institution—was necessary to its perpetuation in this country. Because of the popular character of our institutions there has seldom been any contest in this country between the government and the citizen which required the assistance of the grand jury as a protection against oppressive governmental action. But that it has at times fulfilled a useful function in protecting the citizen against unfounded accusations, prompted by partisan passion or private enmity, can hardly be gainsaid. 12 R. C. L. 1014. However, in substituting in the place of indictment prosecution upon information filed by the sworn official representative of the state in felony as well as misdemeanor cases triable in the criminal courts of record of this State, it was doubt-less the design of our Constitution makers that this responsible officer should perform in the instances designated by the Constitution the same functions and fulfill the same duties with reference to the initiation of prosecutions as formerly devolved upon the grand jury. It is just as much his duty to refrain from bringing an unjust or unfounded prosecution as it is to file an information where the law and the facts warrant it. He should never permit

his highly important office to be made the instrument of
partisan persecution or private malice. 1 Bishop Crim.
Proc. 252. The grand jury cannot be kept in session all
the time, and the undoubted benefits arising from the con-
tinued presence and functioning in populous counties of
some trained and responsible prosecuting officer repesent-
ing the state, vested with the power to initiate prosecu-
tions by way of information, is no doubt the primary reason
for the adoption of the constitutional provision for the
establishment by the legislature in those counties where a
majority of the electorate request it of criminal courts of
record with a judge and a responsible prosecuting attorney
for each court, appointed by the governor and confirmed
by the senate, and transferring to such officer, as to all
cases less than capital triable in such courts, of the vitally
important discretionary powers and functions previously
exercised by the grand jury alone. The grand jury is not
abolished in such counties; it may still when it so desires
indict in all cases as formerly, and retains the sole power
of indictment for capital felonies. It may be a debatable
question whether the proceeding by indictment secures
to the accused any superior rights and privileges over that
by information, but this is a matter going to the wisdom
and policy of these provisions of our Constitution and our
statutes enacted in pursuance thereof, and we do not deem
it within our province to disturb the determination of this
question as made by the constitutional convention and legis-
lature. The delegates of the people who framed our Con-
stitution, and the members of the legislatures elected by
the people who enacted these statutes, are presumed to have
registered the will of the people of this State that in those
counties which desired it the time-honored function of the
grand jury should be modified or transferred in part to
the county solicitor to the extent indicated by the pro-
visions above set forth, and we cannot see that in so doing

they have come in conflict with any of the provisions of the Federal Constitution.

If this contention of the plaintiff in error that he could only have been proceeded against by indictment rather than information under the provisions of the Federal Constitution, had been well founded, the information upon which he was tried would have been absolutely void and the court without jurisdiction, and the method of attacking the judgment by filing a motion to vacate the same, even after the expiration of the term at which it was rendered, would have been allowable. 34 C. J. 268; 15 R. C. L. 688-692. However, as we have seen, this attack on the validity of the information must fail.

The remaining ground of attack upon the information, to the effect that the assistant solicitor was without authority to sign and file the information, is not, in our opinion, such a ground of objection as can be made for the first time by a motion to vacate the judgment, restrain its execution, and quash the information, filed after the expiration of the term of the court during which the accused was tried and judgment rendered. Conceding for the sake of argument, but without deciding, that, as contended by plaintiff in error, the information upon which he was tried, under the provisions of Section 28, of Article V, of the Constitution could only have been signed, sworn to and filed by the prosecuting attorney—the county solicitor "as he is designated under Section 5972, *et seq.,* Revised General Statutes, and that the attempt in Section 5975 to vest the assistant county solicitor with such power is unconstitutional and void, it would appear that plaintiff in error *waived* this alleged ground of objection by interposing the plea of not guilty and going to trial, without making any motion to quash the information upon such ground, and without filing any motion in arrest of judgment after verdict and be-

fore judgment and sentence, or taking any other steps during the term to bring this matter to the attention of the trial court. 31 C. J. 871; 14 R. C. L. 208.

Section 5976, Revised General States, provides that the same rules of practice and pleading that obtain as to indictments shall obtain as to informations. Section 6064, Revised General Statutes, provides that, "No indictment shall be quashed or judgment arrested or new trial granted on account of any defect in the form of the indictment, or of misjoinder of offenses, or for any cause whatsoever, unless the court shall be of the opinion that the indictment is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense and expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense." (See also statutory rules applicable to motions in arrest of judgment in civil cases at law, Sections 2813, 2114, Revised General Statutes, which are in effect somewhat the same.)

A motion in arrest of judgment is ordinarily interposed after verdict and before judgment and sentence. 8 R. C. L. 229. In the case of P. & I. R. R. Co. v. The State, this Court held that a motion in arrest of judgment cannot be made after the term at which the trial was held. But a motion to vacate and set aside a judgment, upon certain recognized grounds, may be interposed after the end of the term. The rule is well settled that where a judgment is entirely void for want of jurisdiction, the power, upon motion, to vacate it and set it aside is not limited to the term at which it was rendered. Einstein v. Davidson, 35 Fla. 342, 354, 17 So. 563; Ala. Hotel Co. v. Mott Iron Works, 98 So. 825, 86 Fla. 608; Malone v. Meres, 109 So. 677; 34 C. J. 210, 127, 253, 255, 269; 15 R. C. L. 682, 688, et seq. If the contention of the plaintiff in error as to the lack of lawful authority on the part of the assistant county solicitor to sign and file informations be correct, this would

undoubtedly have formed a sufficient ground for a seasonable motion to quash the information; but for reasons hereinafter given, this defect, serious as it was, would not have rendered the information absolutely void, nor deprived the court of jurisdiction, and hence did not afford good ground for motion to vacate the judgment, filed after the term. This holding does not conflict with that clause in Section 11 of the Declaration of Rights that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him. This constitutional guarantee does not mean that the indictment or information must be absolutely perfect and free from objections in all respects. There are many imperfections or irregularities in procedure which the accused may waive. 8 R. C. L. 69. Of course, the accusation, whatever its form may be, whether by indictment or information, would be void if it wholly failed to charge any criminal offense, and it would also fail if the accusation were in the form of an information where the law required an indictment. But here we have a court vested with jurisdiction both of the subject matter and of the parties, the parties before the court being the State on the one hand and the defendant on the other, and the exercise of the court's jurisdiction having been invoked by a formal accusation in the form of an information, the first count of which, on which the verdict was based, clearly and correctly charged the defendant with a felony such as is defined by Section 5116, Revised General Statutes, and when the defendant, without motion to quash the information or otherwise objecting to the right or authority of the assistant solicitor to represent the State, pled not guilty, he thereby waived the right to make such objection as is here made by motion to vacate after expiration of the term. Both the court and the defendant having recognized the authority of the assistant county solicitor to act as the prosecuting officer for

the State, it will, in aid of the court's jurisdiction, when attacked, as here, after the term, be presumed that the county solicitor had either authorized or ratified the filing of the information, or adopted the same, or that the court had appointed his assistant to act as county· solicitor; nothing appearing to the contrary. 31 C. J. 626; 6 C. J. 635. Certainly it cannot be said under the facts of this case that the court was without jurisdiction to render the judgment appealed from. 8 R. C. L. 96. The court had authority under Section 5974, Revised General Statutes, in case of the absence or disability of the County Solicitor to appoint a member of the bar to act in that capacity. This power is inherent without statute. King v. State, 43 Fla. 211, 31 So. 254. Where a court has potential jurisdiction of the subject-matter and actual jurisdiction of the parties, the pleading which brings the subject-matter before the court so as to authorize the exercise of its jurisdiction need not necessarily be sufficient in law to withstand the test of demurrer or motion to quash, but it must as a general rule state, at least inferentially, each material element or fact necessary to warrant the court to deliberate thereon and grant the relief accorded. Lovett v. Lovett, decided at the present term. We think the information in this case complied with this rule.

The general doctrine as to the finality of judgments after the expiration of the term of rendition is well stated in the case of Einstein v. Davidson, 35 Fla. 342, 354, and in Alabama Hotel Company v. Mott Iron Works, *supra;* also see 3 C. J. 210, 217, 255, 269; 15 R. C. L. 690.

''It is an invincible presumption of the law that a judicial tribunal, acting within its jurisdiction, has acted impartially and honestly, and the integrity and value of the judicial system, as an institution for the administration of public and private justice, rest largely upon this principle.

Akin to this principle is the important one that a presumption lies in favor of the regularity of the proceedings of any court of general jurisdiction. When such a court acts within its jurisdiction, every presumption is in favor of its judgment, and every reasonable doubt will be resolved in favor of a trial upon the merits. This includes the presumption that such courts act rightly and in conformity to law, and that principle even goes to the extent of presuming that counsel for litigants do their duty." 15 R. C. L. 875.

In the case of Bryan v. The State, 41 Fla. 643, 20 So. 1022, it was held that where an information filed in a criminal court of record had appended to it an affidavit in the form prescribed by statute, and after verdict it was objected, by motions in arrest of judgment and for new trial, that the prosecuting officer did not in fact swear to the information, such objection was waived by pleading to the merits and going to trial. It was stated in the opinion that the defect complained of would have been sufficient to have caused an abatement of the prosecution on proper showing before pleading not guilty and going to trial. Attention was called to the fact that Section 28, of Article V, of the Constitution provides that all offenses triable in such criminal courts of record shall be prosecuted "upon information under oath, to be filed by the prosecuting attorney," and that a form of oath to be made by the prosecuting attorney and appended to the information is prescribed by statute. The opinion continues: "The requirement that the information must be under oath is to secure good faith on the part of the prosecuting officer, and the authorities seem to hold generally, under requirements that the information must be sworn to, that an accused must object to a defective affidavit before going to trial, or at least, before verdict;" citing numerous cases. See also Walker v. State, decided at this term.

In the case of Tarrance v. The State, 43 Fla. 446, 30 So. 685, it was held that all objections to the competency of and to irregularities in selecting, drawing, and impanelling grand jurors, not appearing of record, must be taken advantage of by plea in abatement of the indictment, and not by motion to quash, and that the defendant, having raised the question by motion to quash the indictment, rather than by plea of abatement, the trial court would not be held in error on account of its denial of the motion to quash, and judgment of conviction was affirmed. See also Richardson v. State, 172 Fla. 154, 72 So. 665.

In the case of Kirkland v. The State, 86 Fla. 64, 97 So. 502, this Court held that where a person is indicted for crime and upon arraignment pleads not guilty and goes to trial upon the issue joined, he thereby waived the objection that the indictment was not indorsed "a true bill," as the statute requires.

Furthermore, as bearing upon the contention that the court was without jurisdiction on account of the information having been signed, sworn to and filed by the assistant county solicitor rather than by the county solicitor himself, we are of the opinion that the principles underlying the doctrine of the validity of the acts of officers *de facto* have a pertinent application. We are mindful of the general rule that in order for one to be an officer *de facto,* there must be an office *de jure.* In the case of State, *ex rel.* v. Gleason, 12 Fla. 190, it was held by this Court that an officer *de facto* is one exercising the duties of an office under color of election or appointment, and his acts are as valid and binding upon the public, or upon third persons, as those of an officer *de jure.* In the opinion in that case, quoting from a Wisconsin case, it was said, on page 232, " 'But when it appears that the person exercising the powers of án office is in by such a color of right, and

that he has such possession of the office as makes him in law an officer *de facto,* then his acts, as to third persons, are valid, and his right to hold the office can only be inquired into in some direct proceeding for that purpose. The trial and conviction of the prisoner having occurred after the law was in force, he could not, on *habeas corpus,* raise the question of the strict legal right of the judge to hold the office.' This judge, was, in fact, ousted from office by *quo warranto,* on the ground that his election was irregular and void, yet none of his judgments were disturbed by reason of his want of legal title to the office."

The court also quotes with approval the following quotation from Angell and Ames on Corp., 274: "A person by color of election may be an officer *de facto,* though indisputably ineligible; or though the office was not vacant, but there was an existing officer *de jur* at the time."

An excellent treatment of the *de facto* officer doctrine will be found in 22 R. C. L. 588, *et seq.,* Sections 307 and 310 of which reads as follows: "The *de facto* doctrine was introduced into the law as a matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers. It was seen that it would be unreasonable on all occasions to require the public to inquire into the title of an officer, or compel him to show title, especially since the public has neither the time nor the opportunity to investigate the title of the incumbent. But it should be noted that the legal doctrine as to *de facto* officers rests on the principle of protection to the interests of the public and third parties, and not on the rights of rival claimants. The law validates the acts of *de facto* officers as to the public and third persons on the ground that, though not officers *de jure,* they are in fact officers whose acts public policy requires should be considered valid."

"If an office exists *de jur* the courts are uniform in asserting that the standing of the incumbent as a *de facto* officer is not impaired by the fact that the statute directing the manner in which it is to be filled is unconstitutional. Public policy requires that the acts done by persons exercising official functions, by virtue of legislative authority, which is subsequently declared void, should nevertheless be upheld. The mere judicial declaration of a statute as being unconstitutional does not necessarily render it void *ab initio*. By reason of this principle acts performed by officers *de facto* in the exercise of their official functions and strictly within the limits of an existing statute are not illegal although such law is afterwards judicially declared unconstitutional." See also 29 Cyc. 1390-92.

Whether acting constitutionally or not, the legislature, by Section 5975, attempted to clothe the assistant county solicitor with all the power and authority of the county solicitor, by enacting that such assistant county solicitor "shall have the same powers and perform the same duties as the county solicitor appointing" him, and gives him the power to sign and file informations. Whether the legislature could thus give to the assistant county solicitor the same authority as that already conferred by constitution and statute upon the official prosecuting attorney or county solicitor, it is not necessary for us here to decide, but that they attempted to do so is plain. The effect, so far as the public is concerned, is to some extent the same as if the legislature had provided for an additional county solicitor. We are, therefore, of the opinion that, whether exercising it lawfully or not, the assistant county solicitor was exercising *de facto* the power and authority of the *de jure*, county solicitor, in signing and filing such information under his oath, and so, acting under authority of a statute which has never been declared unconstitutional, such act should be given the same effect as to the public and third persons as

would ordinarily be given to the act of an officer *de facto* occupying and exercising the functions and powers of a *de jure* office, unless timely objection had been made thereto before pleading to the merits and going to trial. People v. Turner (Call) 24 Pac. 857; State v. Elliott, 202 Pac. 847; Walker v. State, decided at the present term.

It has been repeatedly held by this Court that defects in indictments and informations should be called to the attention of the trial court by a motion to quash or a demurrer, so that the defects, if any, may be corrected by the filing of another indictment or information. Neither the common law nor our statutes favor the policy of a defendant in waiting until the last stage of the cause and attacking such defects by a motion in arrest of judgment, the granting of which would have the effect of unravelling the whole proceeding. This rule would apply with still greater force to motions made after the term to vacate judgments. See Smith v. The State, 72 Fla. 449, 73 So. 354; Barineau v. The State, 71 Fla. 598, 72 So. 179; Adams v. The State, 72 Fla. 32, 72 So. 473; Clifton v. The State, 76 Fla. 244, 79 So. 707.

While not purporting to act *pro forma* as the county solicitor, in signing and filing the information, the acts of the assistant county solicitor, in so performing the functions of the *de jure* officer, was recognized and acquiesced in, not only by the court, but by the plaintiff in error himself, hence coming within the spirit and purpose of the *de facto* officer doctrine, so as to preclude plaintiff in error from taking the position, in motion to vacate the judgment after the term, that such action was null and void.

The remaining grounds of the motion to vacate, and of the supplemental motion, are, in our opinion, clearly untenable and require no discussion.

For the reasons above pointed out, we conclude that the

court below was without error in denying said motions, and no reversible error appearing in the record, the judgment of the court below is affirmed.

Affirmed.

WHITFIELD, TERRELL AND STRUM, J. J., concur.

ELLIS, C. J., AND BUFORD, J., dissent.